Case 2:10-cr-00109-JAM   Document 19   Filed 05/18/10   Page 1 of 11

```
1  BENJAMIN B. WAGNER
   United States Attorney
2  MATTHEW D. SEGAL
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, California 95814
4  Telephone: (916) 554-2708
```



FILED
MAY 1 8 2010
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ 33
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CASE NO. 2:10-CR-109 JAM |
|---|---|
| Plaintiff, | ) |
| v. | ) **PLEA AGREEMENT** |
| ROBERT DUANE NIGHSWANDER, | ) DATE: May 18, 2010 |
| Defendant. | ) TIME: 9:15 a.m. |
|  | ) COURT: Hon. John M. Mendez |

## I.

### INTRODUCTION

**A. Scope of Agreement:** The information in this case charges the defendant with interference with the operation of an aircraft. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

1

**B. Court Not a Party:** The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement. If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.

### DEFENDANT'S OBLIGATIONS

**A. Guilty Plea:** The defendant will plead guilty to the sole count of the information, which charges the defendant with interference with the safe operation of an aircraft in violation of 18 U.S.C. § 32(a)(5) and (a)(8). The defendant agrees that he is in fact guilty of that charge and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

**B. Restitution:** The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Payment should be by cashier's or certified check made payable to the Clerk of the Court. Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

**C. Fine:** The defendant agrees to pay whatever criminal fine

the Court might order. The defendant understands that this plea agreement is voidable by the government if he fails to pay the stipulated fine as required by this plea agreement.

**D. Special Assessment:** The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**E. Forfeiture:** The defendant agrees to abandon all of his right title and interest to the United States in an abandonment or forfeiture proceeding to the laser seized from him on October 21, 2009. He agrees that the government may retain, destroy, or convey the laser at the government's sole discretion.

The defendant agrees not to file a claim to any of that property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive his right to notice of any abandonment or forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that abandonment or forfeiture proceeding.

### III.
### THE GOVERNMENT'S OBLIGATIONS

**A. Incarceration Range:** The government will agrees not to recommend a sentence greater than 24 months imprisonment.

**B. Acceptance of Responsibility:** If the United States Probation Office determines that a three-level reduction in the

defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under § 3E1.1(b), so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-sentence report, is truthful and candid with the probation officer, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

## IV.

### ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense(s) to which the defendant is pleading guilty,

First, the defendant interfered with or attempted to interfere with or disable a person who was operating an aircraft,

Second, the defendant acted with the specific intent to interfere with or disable a person who was operating an aircraft,

Third, the defendant acted with reckless disregard for the safety of human life,

Fourth, the person was authorized to operate the aircraft,

Fifth, the aircraft was a civil, armed, or other aircraft in flight in the United States.

18 U.S.C. § 32(a)(5),(8); <u>United States v. Henderson</u>, 243 F.3d 1168, 1172 (9th Cir. 2001) (definition of willfully depends on statutory context, and tends to require knowledge of legal duty when statute criminalizes a regulatory offense); House Rep. 84-1979 (Mar.

29, 1956) (18 U.S.C. § 32 is modeled after the train wrecking statute, 18 U.S.C. § 1992); United States v. Dreding, 547 F.2d 471, 472 (9th Cir. 1976) (defining knowingly and willfully for purposes of train wrecking statute).

## V.
## MAXIMUM SENTENCE

**A. Maximum Penalty:** The maximum sentence that the Court can impose is 20 years of incarceration, a fine of $250,000, a 3-year period of supervised release and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which the defendant is pleading guilty. The defendant further agrees that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B. Violations of Supervised Release:** The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 2 additional years imprisonment.

//

## VI.
## SENTENCING DETERMINATION

**A. Statutory Authority:** The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of

1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by United States v. Booker and United States v. Fanfan, 543 U.S. 220 (VI), 125 S.Ct. 738 (2005)) and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B. Stipulations Affecting Sentence**: The parties agree that the Court should sentence the defendant within the following range: 12-24 months. The defendant agrees not to request a sentence below 12 months and the government agrees not to request a sentence above 24 months.

## VII.

## WAIVERS

**A. Waiver of Constitutional Rights**: The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine

1 witnesses against him; and (f) not to be compelled to incriminate
2 himself.

3     **B.  Waiver of Appeal and Collateral Attack:**  The defendant
4 understands that the law gives him a right to appeal his conviction
5 and sentence.  He agrees as part of his plea, however, to give up the
6 right to appeal the conviction and the right to appeal any aspect of
7 the sentence imposed in this case, so long as the sentence is no
8 greater than the statutory maximum for the offense to which he is
9 pleading guilty.  He specifically gives up his right to appeal any
10 order of restitution the Court may impose.

11     Also regardless of the sentence he receives, the defendant also
12 gives up any right he may have to bring a post-appeal attack on his
13 conviction or his sentence.  He specifically agrees not to file a
14 motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or
15 sentence.

16     Notwithstanding the agreement in paragraph III. A. above that the
17 government will move to dismiss counts against the defendant, if the
18 defendant ever attempts to vacate his plea, dismiss the underlying
19 charges, or reduce or set aside his sentence on any of the counts to
20 which he is pleading guilty, the government shall have the right (1)
21 to prosecute the defendant on any of the counts to which he pleaded
22 guilty; (2) to reinstate any counts that may be dismissed pursuant to
23 this plea agreement; and (3) to file any new charges that would
24 otherwise be barred by this plea agreement.  The decision to pursue
25 any or all of these options is solely in the discretion of the United
26 States Attorney's Office.  By signing this plea agreement, the
27 defendant agrees to waive any objections, motions, and defenses he
28 might have to the government's decision.  In particular, he agrees not

7

to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

**C. Waiver of Attorneys' Fees and Costs**: The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

**D. Waiver of DNA Testing**: Defendant has been advised that the government has in its possession the following items of physical evidence that could be subjected to DNA testing: the laser seized on October 21, 2009 and any other items described in discovery.

The defendant understands that the government does not intend to conduct DNA testing of any items.

Defendant understands that, before entering guilty plea pursuant to this plea agreement, he could request DNA testing of evidence in this case. The defendant further understands that, with respect to the offense(s) to which he is pleading guilty pursuant to this plea agreement, he would have the right to request DNA testing of evidence after conviction under the conditions specified in 18 U.S.C. § 3600. Knowing and understanding his right to request DNA testing, the defendant knowingly and voluntarily gives up that right with respect to both the specific items listed above and any other items of evidence there may be in this case that might be amenable to DNA testing. The defendant understands and acknowledges that by giving up

this right, he is giving up any ability to request DNA testing of evidence in this case in the current proceeding, in any proceeding after conviction under 18 U.S.C. § 3600, and in any other proceeding of any type.  The defendant further understands and acknowledges that by giving up this right, he will never have another opportunity to have the evidence in this case, whether or not listed above, submitted for DNA testing, or to employ the results of DNA testing to support a claim that defendant is innocent of the offense(s) to which he is pleading guilty.

## VIII.
### ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.
### APPROVALS AND SIGNATURES

**A. Defense Counsel:**  I have read this plea agreement and have discussed it fully with my client.  The plea agreement accurately and completely sets forth the entirety of the agreement.  I concur
//
//
in my client's decision to plead guilty as set forth in this plea agreement.

DATED: 5/18/10

_____
ALEXANDRA P. NEGIN
Attorney for Defendant

9

1  **B. Defendant:** I have read this plea agreement and carefully
2  reviewed every part of it with my attorney. I understand it, and I
3  voluntarily agree to it. Further, I have consulted with my attorney
4  and fully understand my rights with respect to the provisions of the
5  Sentencing Guidelines that may apply to my case. No other promises or
6  inducements have been made to me, other than those contained in this
7  plea agreement. In addition, no one has threatened or forced me in
8  any way to enter into this plea agreement. Finally, I am satisfied
9  with the representation of my attorney in this case.

DATED: 5/18/10

_____
ROBERT D. NIGHSWANDER, Defendant

**C. Attorney for United States:** I accept and agree to this plea agreement on behalf of the government.

BENJAMIN B. WAGNER
United States Attorney

DATED: May 18, 2010    By: _____
MATTHEW D. SEGAL
Assistant U.S. Attorney

**EXHIBIT "A"**
**Factual Basis for Plea**

At about 7:30 p.m. on the night of October 21, 2009, two California Highway Patrol (CHP) officers were in a CHP helicopter orbiting seven hundred feet above a felony traffic stop in Orland, California. Both officers were licensed pilots. The tactical flight officer was operating the spotlight to support ground units on the ground below. Major League Baseball's National League Championship was on television.

Approximately fifteen minutes into the call, someone shined a green laser light at the CHP helicopter. The light refracted through the canopy and filled the cockpit in a "disco ball" effect. The pilot was unable to see his instruments, and had to turn his head away from the light source. The illumination ceased, and then began a second time five minutes later, with the same effects on the pilot. As a result, he had to orbit the helicopter farther away from the traffic stop. Another five minutes later, the helicopter was no longer needed at the traffic stop and it departed. The cockpit was then illuminated a third time by the same green light, which again was refracted by the canopy and flooded the cockpit with bright green light. The pilot was again unable to read his instruments and turned the helicopter away from the beam. This third illumination flash-blinded the tactical flight officer for 15-20 seconds. There was a fourth illumination. The tactical flight officer noted the source of the laser light and shined the helicopter's spotlight directly on the source of the laser illuminations – the defendant.

During the incident, the tactical flight officer was in radio contact with CHP officers still in the vicinity after the traffic stop. When the helicopter spotlight lit up the defendant, a CHP sergeant saw him retreat into his garage.

The sergeant detained the defendant and seized from him a small amount of methamphetamine. After inital denials, the defendant admitted that he had shined the laser at the helicopter, and told the CHP sergeant where he had hidden it in the garage. A green laser was recovered from that location.

The defendant said that he knew how dangerous shining a laser at a helicopter could be. He stated that he was aware of a time when a helicopter crashed after a spot light illuminated it. Mirandized, the defendant reiterated his confession.

After the incident, the pilot suffered from a headache.

On December 21, 2009, the defendant was given Miranda warnings and re-interviewed by a Federal Air Marshal. The defendant admitted to the facts set forth above. He also admitted to reading about green lasers on the Internet and knowing that it was unsafe to shine a laser into someone's eyes. The defendant admitted that he shined the laser on the pilot to try to get the pilot to react. The defendant admitted that he had used methamphetamine on October 21, 2009.